FERRIS J. MEIGS, Respondent, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Appellant.

1. JURISDICTIONAL DEFECTS CURED BY STATUTE OF LIMITATIONS. The principle that jurisdictional defects are so vital in their character as to be beyond the help of retrospective legislation does not apply to a statute of limitations, for such a statute will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right.

2. STATE TAX SALE — L. 1885, CH. 448, PRIMARILY A STATUTE OF LIMITATION. Chapter 448 of the Laws of 1885, amending Laws of 1855, chapter 427, section 65 (subsequently re-enacted in part in L. 1891, ch. 217; L. 1893, ch. 711), which makes the comptroller's conveyance executed upon a tax sale conclusive evidence, after the lapse of two years from its record in the county in which the lands conveyed are located, of the regularity of the proceedings in which conveyance was made although in some aspects a curative statute, is, primarily and essentially, a statute of limitations.

3. EJECTMENT AGAINST STATE COMPTROLLER — ACTION BARRED BY STATUTORY NOTICE AFTER TWO YEARS. Where, after the default of the purchaser, at a state tax sale in 1881, of part of a tract of wild, vacant and forest lands in Franklin county, and after the publication of the statutory notice of redemption, the comptroller conveys the whole tract to the state under the statute (L. 1881, ch. 402) by a deed recorded in that county in 1887, and in 1894 duly publishes the statutory notice (L. 1893, ch. 711, § 13) that the lands are thereby declared to be and thereafter shall be deemed to be in his actual possession for the state, the previous owner of the fee of the whole tract, failing to prove any actual possession in himself or his grantors, cannot, in 1897, maintain an action for ejectment against the comptroller, although the notice of redemption published by the comptroller stated that only part of the tract was unredeemed, as such action is barred by the lapse of more than two years since the publi-

cation of the statutory notice (L. 1885, ch. 448, as re-enacted L. 1893, ch. 711); and by the statute (L. 1885, ch. 283) the People of the state acquired not only constructive, but actual, possession of the lands conveyed by the comptroller's deed.·

*Meigs* v. *Roberts,* 42 App. Div. 290, reversed.

(Argued February 8, 1900; decided March 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department entered July 17, 1899, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore E. Hancock* for appellant. The comptroller is not in such possession of the lands in question that the title of the state to these premises can be tested, impaired or questioned in an action of ejectment against said comptroller. (L. 1895, ch. 395, § 270 ; L. 1885, ch. 283, § 7 ; *Ensign* v. *Barse,* 107 N. Y. 339 ; *People* v. *Turner,* 145 N. Y. 456 ; *Ostrander* v. *Darling,* 127 N. Y. 70 ; *People ex rel.* v. *Campbell,* 22 App. Div. 170 ; *People ex rel.* v. *Roberts,* 8 App. Div. 219 ; 151 N. Y. 540 ; *Locke* v. *State,* 140 N. Y. 480 ; *People* v. *Denison,* 84 N. Y. 272 ; *Splittorf* v. *State,* 108 N. Y. 205 ; *Peck* v. *State,* 137 N. Y. 372 ; *Carr* v. *U. S.,* 98 U. S. 433.) The comptroller's deed to Turner & Marsh did not convey the title which the state had acquired at the 1881 and 1885 tax sales. (L. 1855, ch. 427 ; L. 1881, ch. 402 ; L. 1860, ch. 209.) The Forest Preserve Act (Ch. 283, L. 1885) is a special act, relating to the forest commission and the forest preserve. The object of this act, as well as the one establishing the fisheries, game and forest commission, was to place the forest commission in the actual possession and control of the forest preserve as the representatives of the state. The general statutory provision contained in chapter 453 of the Laws of 1885 (§ 93), and chapter 711, Laws of 1893 (§ 13), permitting the comptroller to advertise himself in possession of wild, vacant and forest lands, must be held not to apply to lands of

the state contained in the forest preserve. (*People* v. *Turner*, 145 N. Y. 461 ; *People ex rel.* v. *Campbell*, 152 N. Y. 51 ; *N. Y.*, *L. E. & W. R. R. Co.* v. *Bd. of Suprs.*, 67 How. Pr. 5 ; *Matter of Comrs. of Central Park*, 50 N. Y. 493 ; *People ex rel.* v. *Palmer*, 52 N. Y. 83 ; *People* v. *Quigg*, 59 N. Y. 83 ; *Matter of D. & H. C. Co.*, 69 N. Y. 209 ; *Coxe* v. *State*, 144 N. Y. 411 ; *Woods* v. *Bd. of Suprs.*, 136 N. Y. 403 ; *People ex rel.* v. *N. Y. C. Protectory*, 101 N. Y. 201.) This action was not commenced within the time required by chapter 448 of the Laws of 1885, which statute has been declared valid as a curative act and as a statute of limitations. (*People* v. *Turner*, 145 N. Y. 451 ; *Turner* v. *State of N. Y.*, 168 U. S. 90 ; *Terry* v. *Anderson*, 95 U. S. 628 ; *Matter of Brown*, 135 U. S. 701 ; *Sprecker* v. *Wakely*, 11 Wis. 432 ; *Geekie* v. *K. C. Co.*, 106 U. S. 379, 384 ; *Townsend* v. *Wilson*, 9 Penn. St. 270 ; *Bronson* v. *S. C. L. Co.*, 44 Minn. 251 ; *Williams* v. *Bd. of Suprs.*, 122 U. S. 163 ; *Coulter* v. *Stafford*, 48 Fed. Rep. 266.) The 1881 tax sale was regular, and the notice to redeem and publication thereof was in strict compliance with the statute. (*People* v. *Turner*, 117 N. Y. 238 ; *Chamberlain* v. *Taylor*, 36 Hun, 43 ; *People* v. *Turner*, 145 N. Y. 460 ; *Bank of Chillicothe* v. *Dodge*, 8 Barb. 237 ; *Robertson* v. *O. E. Co.*, 82 Hun, 585 ; *Merchants' Bank* v. *Spalding*, 12 Barb. 302 ; *Hamilton* v. *People*, 57 Barb. 633 ; *Hagner* v. *Hall*, 10 App. Div. 583 ; *Ensign* v. *Barse*, 107 N. Y. 338 ; *Williams* v. *Bd. of Suprs.*, 122 U. S. 163.) The 1885 tax sale was regular and conveyed to the state a valid title to the land described in the complaint. (*Andrews* v. *Wheeler*, 22 App. Div. 596 ; *Colman* v. *Shattuck*, 62 N. Y. 358 ; *Chamberlain* v. *Taylor*, 36 Hun, 25 ; *People* v. *Turner*, 117 N. Y. 227 ; 145 N. Y. 451 ; *Ensign* v. *Barse*, 107 N. Y. 338 ; *Ostrander* v. *Darling*, 127 N. Y. 70 ; *People ex rel.* v. *Roberts*, 8 App. Div. 219 ; *People ex rel.* v. *Roberts*, 151 N. Y. 540 ; *People ex rel.* v. *Chapin*, 104 N. Y. 369.) The plaintiff has attempted to secure title to the premises in question at a time when they were held adversely to his grantors. The conveyance to Meigs was void. (Code Civ. Pro. § 1501 ;

*People ex rel.* v. *Roberts*, 151 N. Y. 541; *People* v. *Turner*, 145 N. Y. 461; *People ex rel.* v. *Campbell*, 152 N. Y. 58; *Quindairo Township* v. *Squier*, 51 Fed. Rep. 152; *Chamberlain* v. *Taylor*, 26 Hun, 603; 92 N. Y. 348; *Sands* v. *Hughes*, 53 N. Y. 287; *Webb* v. *Bindon*, 21 Wend. 98; *Jackson* v. *Andrews*, 7 Wend. 152; *Christie* v. *Gage*, 71 N. Y. 189; *Crary* v. *Goodman*, 22 N. Y. 170; *Pearce* v. *Moore*, 114 N. Y. 259.)

*John P. Badger* for respondent.  The finding of the trial court that the lands in controversy are within the forest preserve, and that the commissioners of fisheries, game and forests have the care, custody, control and superintendence of the same is erroneous.  (L. 1885, ch. 283, § 7; L. 1855, ch. 427, § 61.)  Upon the publication of the notice of redemption by the comptroller, the owner of the land had a right to rely upon the official statement contained in it that only 100 acres of his land had been sold; that by that sale the taxes on the entire premises had been paid.  (L. 1855, ch. 427, § 50; 2 R. S. 1137.)  The attempted transfer to the state was void for the reason that the notice of redemption, as published, gave the owner of the land official notice and assurance that only 100 acres had been sold; that the taxes had been thereby paid; that if the owner did not redeem, that quantity and inferentially no more, would be conveyed to the purchaser, and by a further inference, that the rest of his land was free and would not be conveyed to the state under the statute authorizing such conveyance under proper circumstances.  (*Van Benthuysen* v. *Sawyer*, 36 N. Y. 150; *People ex rel.* v. *Registrar*, 114 N. Y. 21; *Breisch* v. *Coxe*, 81 Penn. St. 336; *Forrest* v. *Henry*, 33 Minn. 434; *Martin* v. *Barbour*, 34 Fed. Rep. 701.)  As the comptroller never published any notice of redemption of the lands transferred to the state, such omission would have rendered the transfer to the state void even if it had been otherwise valid.  (*Stuart* v. *Palmer*, 74 N. Y. 183; *Simonton* v. *Hays*, 32 Hun, 287; 101 N. Y. 687; *Becker* v.

*Holdridge,* 47 How. Pr. 430; *Meigs* v. *Roberts,* 42 App. Div. 296; *Bunner* v. *Eastman,* 50 Barb. 639; *Overing* v. *Foote,* 65 N. Y. 277; *People ex rel.* v. *Mosier,* 56 Hun, 66.) Neither the act of 1885, nor of 1893, could or did cure the defects in or validate the transfer to the state of the lands in question in 1884, as those defects were of such character as to make them in the highest degree jurisdictional. (*Turner* v. *Boyce,* 11 Misc. Rep. 506; *Cromwell* v. *MacLean,* 123 N. Y. 489; *Joslyn* v. *Rockwell,* 128 N. Y. 334; *Ensign* v. *Barse,* 107 N. Y. 338; *Meigs* v. *Roberts,* 42 App. Div. 298.) As a transfer to the state at a tax sale of lands previously owned and held by it is only authorized or permissible where the state does in fact own it, the subsequent so-called sale is an absolute nullity. (*Turner* v. *Boyce,* 11 Misc. Rep. 512; *Cromwell* v. *MacLean,* 123 N. Y. 474.)

CULLEN, J.    This action is in ejectment for a tract of wild land in Franklin county containing 585⅔ acres, and was commenced on April 2nd, 1897.    The complaint alleged that the plaintiff was the owner in fee and entitled to the immediate possession of the lands; that since the 1st of January, 1895, the defendant had been and then was comptroller of the state of New York, and that as such comptroller he was and had been for two years in possession of the said lands.    The defendant answered admitting that he was comptroller of the state during the period stated, and put in issue every other allegation of the complaint.    The answer then set up that the People of the state were, and for more than ten years past had been, in the actual possession of the premises under a certificate of sale made by the comptroller to the People of the state of New York on the 23d day of November, 1881, in pursuance of a sale held for non-payment of taxes, and a conveyance made on the 31st day of October, 1884, under such tax sale after the expiration of the two years allowed by law for redemption, which conveyance was recorded in the office of the clerk of the county of Franklin on April 6th, 1887.    The answer further set forth as a separate defense a similar certifi-

cate, executed on the 29th day of November, 1885, on a sale for
unpaid taxes, a conveyance thereunder dated on the 15th day
of February, 1890, and the record of the conveyance in the
clerk's office of Franklin county on the 3d day of March, 1891.
The defendant further pleaded that under the provisions of
chapter 448 of the Laws of 1885, chapter 217, Laws of 1891,
and chapter 711 of the Laws of 1893, the action was not
brought within the time prescribed by law, and was barred by
the Statute of Limitations.

On the trial the plaintiff traced his title by a chain of con-
veyances from an original grant by the state in 1798.   The
evidence shows that beginning December 22d, 1894, the defend-
ant published for three weeks a notice stating that the premises
in controversy, with others, were wild, vacant and forest lands,
located in Franklin county to which the state held title, and
that from and after the expiration of the publication posses-
sion thereof would be deemed to be in the control of the state,
under provision of section 13, chapter 711 of the Laws of
1893. The tax certificates and conveyances were put in evidence.
The only attack on the conveyance of 1884 made in pursuance
of the tax sale held in 1881, related to the notice of redemption
published by the comptroller.   It appears that on the sale one
Josiah Talmage purchased one hundred acres of the tract for
the full amount of the unpaid taxes, and that a certificate of
sale was issued to him.  Talmage never paid the purchase money
or completed his purchase.    While Talmage was thus in default
the comptroller published a notice of unredeemed lands in which
it was stated as to these premises that one hundred acres were
unredeemed.  After the publication of the notice to redeem, the
comptroller, on account of Talmage's failure to pay the purchase
price, conveyed the whole tract of 585⅔ acres to the state,
as required by chapter 402 of the Laws of 1881.   It is unnec-
essary to refer to the grounds on which the conveyance of
1890 was assailed.  No proof was given of any possession or
occupation of the premises by the plaintiff or his predecessors
in title.   The trial court dismissed the complaint substantially
on the ground that the premises were part of the forest pre-

serve, and in the occupation of the state; that an action against the state to test its title could not be maintained except by consent of the state, and that the statute of 1893 (Chapter 711, § 13) was not sufficient to authorize the maintenance of such an action. The learned Appellate Division, by a divided court, reversed the judgment and granted a new trial, holding that the act of 1893 authorized the plaintiff to sue the state and oust it from possession by an action against the comptroller. It further held that the notice of redemption on the tax sale of 1881 was fatally defective, in that it stated that one hundred acres only of the premises in suit were unredeemed while the conveyance was of the whole tract; that for this defect the conveyance made in pursuance of the sale in 1884 did not pass title and that its invalidity was not cured by the provisions of chapter 148, Laws of 1885 (subsequently re-enacted in part, chap. 217, Laws of 1891; chap. 711, Laws of 1893), which makes a conveyance of the comptroller upon tax sales, after the lapse of two years from its record in the county in which the lands are situated, conclusive evidence of the regularity of the proceedings in which conveyance was made.

We do not find it necessary to pass upon many of the questions which have been elaborately argued before us, or even the one upon which the decision of the trial court proceeded. We are of opinion that the lapse of time between the record of the conveyance of 1884 and the commencement of this action barred the right to the plaintiff to maintain it, even assuming the other questions in the case should be resolved in his favor. The learned Appellate Division held that the failure to publish a proper redemption notice was jurisdictional as to the conveyance of 1884, and, hence, not cured by chapter 448 of the Laws of 1885, and cited *Ensign* v. *Barse* (107 N. Y. 329) and *Joslyn* v. *Rockwell* (128 N. Y. 334) as authorities for that proposition. We think the learned court took too narrow a view of the statute of 1885. This statute, though in some aspects a curative law, is primarily and essentially much more; it is a statute of limitation. It was dis-

tinctly held to be such in two decisions of this court (*People*
v. *Turner*, 117 N. Y. 227; *Same* v. *Same*, 145 N. Y. 459),
and by the Supreme Court of the United States. (*Turner* v.
*New York*, 168 U. S. 90.) A curative act in the ordinary
sense of that term is a retrospective law acting on past cases
and existing rights. The power of the legislature to enact
such laws is, therefore, confined within comparatively narrow
limits, and they are usually passed to validate irregularities in
legal proceedings or to give effect to contracts between parties
which might otherwise fall for failure to comply with techni-
cal legal requirements. (Cooley's Constitutional Limitations,
p. 454.) A very full enumeration of the cases in which the
legislature may properly exercise this power is to be found in
*Forster* v. *Forster* (129 Mass. 559). But there may be in legal
proceedings defects which are not mere informalities or irreg-
ularities, but so vital in their character as to be beyond the
help of retrospective legislation; such defects are called
jurisdictional. This principle does not apply to a Statute of
Limitations, for such a statute will bar any right, however
high the source from which it may be deduced, provided that
a reasonable time is given a party to enforce his right;
(*Terry* v. *Anderson*, 95 U. S. 628; *Turner* v. *New York*,
*supra*.) *Ensign* v. *Barse* (*supra*) was strictly a case of a
retrospective statute, for no period of time was given within
which any party affected could assert his rights. The same is
true of *Cromwell* v. *MacLean* (123 N. Y. 474). In *Joslyn*
v. *Rockwell* (*supra*), as well as in the two cases of *People* v.
*Turner*, all of which arose under the statute of 1885, there
is to be found a discussion of defects which it was claimed
were jurisdictional and not cured by that act. Such discus-
sion, however, is not to be construed as authority for the
proposition that jurisdictional defects in legal proceedings,
which are beyond the scope of retrospective legislation, will
equally take a claim out of the bar of a Statute of Limita-
tions. The existence of such defects was necessarily consid-
ered in the authorities cited because the statute of 1885, in
terms, exempted from its operation cases where the taxes had

been paid, or where there was no legal right to assess the land on which they were laid. There is no exception, however, as to defects in notices of redemption or in their publication; on the contrary, it is expressly provided that the comptroller's deed, after the lapse of the requisite time, shall be conclusive evidence that "all notices required by law to be given previous to the expiration of the two years allowed by law to redeem were regular, and regularly given."

The comptroller's deed of 1881 was recorded on the 6th day of April, 1887, while this action was not brought till nearly ten years thereafter. If it be claimed that the statutory limitation of two years did not run during some portion of this period because there were no persons or officers against whom the plaintiff could maintain an action in assertion of his title (a contention which seems to be in direct opposition to the decisions in the case of *People* v. *Turner*), certainly the disability ceased at the expiration of the publication of the comptroller's notice declaring that the state had resumed possession of the lands; for the very foundation of the plaintiff's whole case is the proposition that the statute under which that notice was published authorizes him to bring this suit. The most that could result from the plaintiff's contention, if good, would be that the statutory limit of two years would not commence to run until the publication of the comptroller's notice. But more than two years elapsed between that notice and the commencement of this action.

It is questionable whether as to an owner in actual possession of land the record of a hostile conveyance in the clerk's office is sufficient to set a Statute of Limitations running against him so as to destroy his title. (See remarks, PECKHAM, J., in *Joslyn* v. *Rockwell, supra;* also Cooley's Constitutional Limitations, p. 366.) The decisions on the subject are in conflict. In *Groesbeck* v. *Seeley* (13 Mich. 29) and in *Case* v. *Dean* (16 Mich. 12) it was held that even as to an owner in constructive possession only, a limitation law could not compel him to resort to legal proceedings in defense of his title. A contrary view was taken in *Hill* v. *Kricke* (11

Wisconsin, 442) and in *Leffingwell* v. *Warren* (2 Black [U. S.], 599).

In the case before us, as already stated, the plaintiff has not proved any actual possession in himself or in his grantors. If he relies on constructive possession as following the legal title, then such possession ceased with the publication of the comptroller's notice of possession by the state. Here, again, the plaintiff must face the original proposition on which his action is based, that by virtue of the notice the comptroller was placed in either actual or constructive possession. We are, therefore, of opinion that in any view of the case the plaintiff's right to maintain this action was barred after the expiration of two years from the time of the comptroller's notice. Of this last claim there is further to be said, that, in the second *Turner Case* (145 N. Y. 451), this court held, through Gray, J., that by chapter 283, Laws of 1885, the People of the state acquired not only constructive, but actual, possession of the lands conveyed to them by the comptroller's deed.

We think the answer of the defendant (for all the facts are pleaded) was sufficient, not only to raise the six months' limitation prescribed by the act of 1885, but also the limitation we have discussed.

The judgment of the Appellate Division should be reversed and the judgment entered on the decision of the trial court affirmed, with costs.

Parker, Ch. J., Gray, O'Brien, Haight and Werner, JJ., concur; Landon, J., not sitting.

Judgment reversed, etc.